UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FS MEDIA HOLDING CO. (JERSEY)
LIMITED,

               Plaintiff,

   - against -

LIONEL HARRISON, ARTISTS RIGHTS
ENFORCEMENT CORPORATION, and
CHARLES RUBIN,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X



## OPINION AND ORDER

### 13 Civ. 3144 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Plaintiff FS Media Holding Co. (Jersey) Limited ("FSMH") brings this diversity action against defendants, alleging (1) breach of contract against Lionel Harrison, individually and as personal representative of the Estate of Wilbert Harrison ("Harrison"), (2) tortious interference with contract against Artists Rights Enforcement Corporation ("AREC") and Charles Rubin, (3) conversion against Harrison, AREC, and Rubin, and (4) money had and received against AREC and Rubin.[1]  Defendants now move to dismiss Count Two (tortious interference against AREC and Rubin), a portion of Count Three (conversion

_____

[1]      *See* Amended Complaint and Jury Demand ("Am. Compl.").

1

against Harrison and Rubin), and a portion of Count Four (money had and received against Rubin) on various grounds.[2]  For the following reasons, Defendants' motion is denied.

## II.    BACKGROUND[3]

### A.    The Parties

FSMH, a Jersey corporation with its principal place of business in Jersey, acquired all of First State Media Group (Ireland) Limited ("FSMG")'s "right, title, and interest in and to FSMG's assets, including the assets acquired from Harrison under the Royalty Agreement" in September 2008.[4]  For purposes of this motion, FSMH also refers to FSMG prior to this transfer of assets.

Wilbert Harrison, who died in 1994, wrote and composed a musical composition, "Let's Stick Together" a/k/a "Let's Work Together" (the "Composition").[5]  Lionel Harrison, his son and sole heir, is entitled to receive all of

---

[2]    See Defendant's Memorandum of Law in Support of Their Motion to Dismiss, in Part, Plaintiff's First Amended Complaint; Defendant's Reply Memorandum of Law in Further Support of Their Motion to Dismiss, in Part, Plaintiff's First Amended Complaint.

[3]    Unless otherwise noted all facts are drawn from the Amended Complaint.

[4]    Am. Compl. at 3–4.

[5]    See id. at 4.

his father's interest in the "royalties attributable to Wilbert Harrison's authorship interest" in the Composition (the "Royalties").[6]  Lionel Harrison currently resides in Florida.

AREC, a New York corporation with its principal place of business in New York, entered into an agreement with Harrison on May 14, 1997, where AREC agreed to collect royalties owed to Harrison in association with the Composition ("AREC Agreement").[7]  Rubin, a resident of New York, is the founder and acting president of AREC.[8]

## B.      The Royalty Agreement

Through the Royalty Asset Purchase and Sale Agreement executed on November 15, 2007 (the "Royalty Agreement"), Harrison granted FSMH exclusive rights to all Royalties in the Composition.[9]  Specifically, through the Royalty Agreement, Harrison "sells, conveys, assigns, transfers and sets" all of his "right, title, interest, benefits and entitlements" in all "fees, royalties, revenues . . . derived directly or indirectly from Harrison's authorship interest in the Composition . . .

---

[6]      Royalty Asset Purchase and Sale Agreement ("Royalty Agreement"), Ex. A to Am. Compl., at § 1(c)(i).  *See also* Am. Compl. at 4.

[7]      *See* Royalty Agreement at § 1(a); Am. Compl. at 4–5.

[8]      *See* Am. Compl. at 4.

[9]      *See* Royalty Agreement at § 1(c)(i).

regardless of whether paid by EMI, BMI or any other person or party."[10]   The

Royalty Agreement granted FSMH the "sole, exclusive and perpetual right

throughout the world and universe to collect, receive and retain such Royalties."[11]

Upon closing, Harrison delivered an "executed copy of the relinquishment and

waiver of AREC's rights" ("Waiver and Relinquishment of Rights"), releasing

AREC and Harrison from the AREC Agreement.[12]   In return, FSMH paid Harrison

a total of $1,825,000, with the first payment due at closing, and the second and

final payment due on June 1, 2008.[13]

FSMH alleges that in contravention of the Royalty Agreement, it has

only received a single royalty payment even though it timely paid Harrison the full

$1,825,000 purchase price.[14]   According to FSMH, Rubin sent FSMH the bi-annual

royalty payment from EMI Music Publishing, Inc. ("EMI") on March 19, 2008, for

the period ending December 31, 2007.[15]   FSMH alleges that this was the only

payment that Defendants were obliged to send in order to receive the second

---

[10]     *Id.* §§ 1(c)(i), 1(u), 2(a).

[11]     *Id.* § 1(c)(i).

[12]     *Id.* § 4(b)(iv).  *See also* Am. Compl. at 6.

[13]     *See id.* § 3(a)–(b).

[14]     *See* Am. Compl. at 6.

[15]     *See id.* at 6–7.

4

installment of the purchase price.[16]

        After FSMH paid its second and last installment of the purchase price

on June 1, 2008, EMI continued to send royalty payments to AREC, who cashed

the checks and transferred the funds to Harrison in accordance with the

arrangement specified in the AREC Agreement.[17]  From June 30, 2008 through

December 31, 2012, EMI paid a total of $347,755.40 in royalties due on the

Composition to AREC, yet those payments were never sent to FSMH.[18]

### C.    FSMH's Actions for Breach of Contract, Tortious Interference, Conversion, and Money Had and Received

        FSMH's tortious interference with contract claim alleges that

AREC and Rubin "intentionally and improperly procured" Harrison's breach

of the Royalty Agreement by retaining and transferring to Harrison royalty

payments rightfully belonging to FSMH under the Royalty Agreement.[19]

FSMH alleges that Harrison and AREC executed the Waiver and

Relinquishment of Rights, whereby AREC surrendered rights to all royalties

---

[16]     *See id.*

[17]     *See id.* at 8.

[18]     *See id.* at 7–10.

[19]     Plaintiff's Reply to Defendant's Memorandum of Law in Support of Their Motion to Dismiss, in Part, Plaintiff's First Amended Complaint ("Opp. Mem."), at 8.

associated with the Composition, and that AREC and Rubin acted in bad faith by keeping these payments and inducing Harrison's alleged breach of the Royalty Agreement.[20]  In fact, FSMH avers that despite Harrison owing all future royalty payments to FSMH pursuant to the Royalty Agreement, Harrison continued to employ the payment structure set out in the AREC Agreement, by which AREC collects royalty payments and distributes fifty percent of their value to Harrison, retaining the remainder for its services.[21]

FSMH claims that under the Royalty Agreement and the Waiver and Relinquishment of Rights, AREC, Rubin, and Harrison have wrongfully taken control of the royalty payments, which rightfully belongs to FSMH.[22]

Finally, FSMH claims that AREC and Rubin cashed the royalty checks rightfully belonging to FSMH, and that under equitable principles, whatever amount that they had personally obtained from those checks belongs to FSMH.[23]

---

[20]     *See id.* at 9; Am. Compl. at 12.

[21]     *See* Am. Compl. at 5, 12.

[22]     *See id.* at 12–13.

[23]     *See id.* at 13–14.

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."[24]  The court evaluates the sufficiency of a complaint under the "two-pronged approach" advocated by the Supreme Court in *Ashcroft v. Iqbal*.[25]  First, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[26]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to withstand a motion to dismiss.[27]  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[28]

To survive a Rule 12(b)(6) motion to dismiss, the allegations in a

---

[24]     *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quotation marks and citation omitted).

[25]     556 U.S. 662, 679 (2009).

[26]     *Id.*

[27]     *Id.* at 663.

[28]     *Id.* at 664.

complaint must meet a standard of "plausibility."[29]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[31]  For the purposes of a 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[32]

**B.    New York Law Governs the Tortious Interference, Conversion, and Money Had and Received Claims**

The Royalty Agreement contains a New York choice of law and choice of forum provision:

> This Agreement shall be deemed to be made in the State of New York and its validity, construction and effect shall be governed by the laws of the State of New York applicable to agreements wholly performed therein.  All disputes under this agreement shall be submitted exclusively to the state or Federal courts located in New York County in the State of New York, each party hereby

---

[29]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

[30]     *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted).

[31]     *Id.* (quotation marks and citation omitted).

[32]     *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

agreeing to submit to the jurisdiction of said courts.[33]

A federal court sitting in diversity applies the choice of law rules of the state in which it sits.[34]   Under New York Law, "[a]bsent fraud or a violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."[35]   Neither party disputes the applicability of the Royalty Agreement's choice of law provision, which designates New York law as controlling.[36]   Accordingly, FSMH's claims are governed by New York law.

### C.   Governing Law

#### 1.   Tortious Interference with Contract

"Under New York law, the elements of tortious [intentional] interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's

---

[33]     Royalty Agreement at § 19(i).

[34]     *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).

[35]     *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).

[36]     *See* Royalty Agreement at § 19(i).

9

breach of the contract without justification'; (4) 'actual breach of the

contract'; and (5) 'damages resulting therefrom.'"[37]

### 2. Conversion

To state a claim for conversion under New York law, a plaintiff

must allege facts sufficient to establish that the defendant acted without

authorization, the defendant exercised dominion or right of ownership over

property belonging to the plaintiff, the plaintiff has made a demand for the

property, and that demand has been refused.[38]  However, "[d]emand is not

always required in order to make out a claim for conversion.  It is required

only when the original possession is lawful."[39]  "[W]here the defendant

holds the property unlawfully . . . 'no demand and refusal are necessary to

---

[37]     *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006)
(quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)).
*Accord Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 124–25
(2d Cir. 2008).

[38]     *See Seanto Exports v. United Arab Agencies*, 137 F. Supp. 2d 445,
451 (S.D.N.Y. 2001).

[39]     *Reserve Solutions, Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 288
(S.D.N.Y. 2006) (holding that when the original possession is lawful, "the demand
serves to put the party in possession on notice that she holds the property
wrongfully and the possession becomes an unlawful conversion once that party
refuses the rightful owner's demand for the property").

render the defendant liable.'"[40] "Unlawfulness," furthermore, does not require theft.[41] "Rather, '[i]t is sufficient if there be interference with the owner's dominion over his property to the exclusion of his rights.'"[42] Plaintiff must also "demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing."[43]

"Money can be the subject of a conversion action 'where there is a specific identifiable fund, and an obligation to return or otherwise treat in a particular manner the specific fund in question.'"[44] However, an action for conversion of money may not lie "'where damages are merely being sought for breach of contract.'"[45] "[P]laintiff must allege acts that are

---

[40] *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (quoting *Nat Koslow, Inc. v. Bletterman*, 23 Misc. 2d 340, 343 (Sup. Ct. N.Y. Co. 1960)). *Accord Frink Am., Inc. v. Champion Rd. Machinery Ltd.*, 43 Fed. App'x 456, 458–59 (2d Cir. 2002).

[41] *Id.* at 50.

[42] *Id.* (quoting *Mendelson v. Boettger*, 257 A.D. 167, 169–70 (2d Dep't 1939)).

[43] *Gateway Overseas, Inc. v. Nishat Ltd.*, No. 05 Civ. 4260, 2006 WL 2015188, at *7 (S.D.N.Y. July 13, 2006) (quotation marks and citation omitted).

[44] *Id.* (quoting *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 124 (1st Dep't. 1990)).

[45] *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (quoting *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D. 2d 883, 884 (1st Dep't. 1982)).

unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights."[46]  A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations.[47] Conversion claims are governed by a three-year statute of limitations.[48]

### 3.    Money Had and Received

Under New York law, "an action for money had and received lies when '(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money.'"[49]  Such an action is "precluded where there is an express contract between the parties addressing the same subject matter."[50]  Traditionally, a

---

[46]    *Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (citation omitted).  *Accord Calcutti v. SBU, Inc.*, 223 F. Supp. 2d 517, 523 (S.D.N.Y. 2002).

[47]    *See Briarpatch Ltd. v. Geisler Roberdeau, Inc.*, 148 F. Supp. 2d 321, 328 (S.D.N.Y. 2001).

[48]    *See* Civil Practice Law and Rules § 214(3).

[49]    *Panix Promotions, Ltd. v. Lewis*, No. 01 Civ. 2709, 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984)).  *Accord Miller v. Schloss*, 218 N.Y. 400, 407 (1916).

[50]    *Kalimantano GmbH v. Motion in Time, Inc.*, No. 12 Civ. 6969, 2013 WL 1499408, at *17 (S.D.N.Y. Apr. 12, 2013) (citing *Parsa v. State*, 64 N.Y.2d 143, 148 (1984)).

money had and received claim is available "if one man has obtained money

from another, through the medium of oppression, imposition, extortion, or

deceit, or by the commission of a trespass."[51]

## IV.   DISCUSSION

### A.   Tortious Interference with Contract

FSMH has pled all of the elements for a tortious interference with

contract claim against AREC and Rubin.  For the purposes of this motion, it is

undisputed that a valid contract existed between Harrison and FSMH, and that

AREC and Rubin had knowledge of it.  It is also undisputed that Harrison breached

the contract by failing to send FSMH his royalty payments and that damages

resulted from the breach.  Neither AREC nor Rubin is a party to that contract.

Thus, the only element in dispute is the third element — the intentional

procurement by either AREC or Rubin of Harrison's breach of the Royalty

Agreement without justification.  To plead a tortious interference claim, FSMH

must allege facts that make it plausible that AREC and Rubin intentionally and

improperly induced Harrison to breach the Royalty Agreement.  The Second

Circuit has noted with regard to the third element, that "a plaintiff may recover if

she can demonstrate that the 'defendant's deliberate indifference result[ed] in a

---

[51]     *Miller*, 218 N.Y. at 408.

breach of [the] contract.'"[52]

FSMH alleges that AREC and Rubin understood that EMI's royalty payments from December 2007 onwards belonged to FSMH, less any previously agreed upon administrative fee.[53]  Thus, AREC's decision to cash the subsequent royalty checks despite knowing their true owner and to pay Harrison in accordance with the terms of the AREC Agreement, gives rise to a plausible inference that AREC induced Harrison to breach the Royalty Agreement in order to continue receiving royalty payments.[54]

FSMH also alleges that Rubin tortiously interfered with FSMH's Royalty Agreement.  As an initial matter, Rubin signed the AREC agreement and the Waiver and Relinquishment of Rights in his capacity as the acting President of AREC.[55]  After Rubin executed the Waiver and Relinquishment of Rights, he knew that EMI was not forwarding the royalty payments to FSMH and was, in fact, still sending them to AREC.[56]  Moreover, FSMH explicitly alleges that Rubin acted in

---

[52]     *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 Fed. App'x 102, 105–06 (2d Cir. 2012) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)).

[53]     *See* Am. Compl. at 7.

[54]     *See id.* at 9.

[55]     *See id.* at 5–6.

[56]     *See id.* at 6–7.

14

bad faith and retained the royalty payments for his "personal pecuniary gain," supporting an inference that Rubin had incentives to procure Harrison's breach of the Royalty Agreement and did in fact do so.[57]  These claims are sufficient to establish a plausible tortious interference claim against Rubin.

### B.    Conversion

FSMH argues that Rubin and Harrison's respective retention of the royalties for the periods at issue constitutes conversion.  As an initial matter, FSMH has adequately pled that Rubin and Harrison knew that they wrongfully possessed the royalty payments, and thus a showing of demand and refusal is unnecessary.[58]  FSMH has met the remaining elements for a conversion claim against Rubin.  FSMH alleges that AREC cashed the royalty checks and "retained the money in accordance with the arrangement detailed in the [AREC] Agreement," even though the money rightfully belonged to FSMH.[59]  FSMH further argues that the express terms of the AREC Agreement authorized *both* AREC and Rubin to retain fifty percent of all royalty payments collected.[60]  Thus,

---

[57]    Opp. Mem. at 9.

[58]    *See* Am. Compl. at 5–10.  *See also Frink Am., Inc.*, 43 Fed. App'x at 458–59.

[59]    Am. Compl. at 7; *see also* Opp. Mem. at 3.

[60]    *See* Opp. Mem. at 11.

15

FSMH properly states a claim for conversion against Rubin.

In order for FSMH to maintain a conversion action against Harrison, it must not be duplicative of FSMH's breach of contract claim.  Because damages beyond those available for the breach of contract claim are available, the conversion claim against Harrison is not duplicative.[61]  The money at issue here is specifically identifiable as royalty payments for the period from 2008 to the present.[62]  Under the Royalty Agreement, Harrison was obliged to transfer the royalty payments to FSMH yet he failed to do so, thus interfering with FSMH's superior possessory right.[63]  Punitive damages are available in conversion claims but not in breach of contract claims.[64]  FSMH alleges that Harrison continued to

---

[61]     *See Ad Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04 Civ. 8832, 2007 WL 2962591, at *4–5 (S.D.N.Y. Oct. 10, 2007). ("[E]ven if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim . . . . [S]imilarly, a conversion claim will 'be deemed redundant when damages are merely being sought for breach of contract.'") (quoting *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 124 (S.D.N.Y. 1996)).

[62]     *See* Am. Compl. at 7.

[63]     *See* Royalty Agreement at § 6(a) ("Seller shall, and Seller shall cause each Seller Related Party to, upon receipt, turn over to Buyer (and in no event later than fifteen (15) business days of receipt), any and all Royalties received by Seller or any Seller Related Party regardless of when earned . . . without offset or deduction of any kind or for any reason.").

[64]     *See Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984).

16

retain royalty payments collected from EMI without authorization and in willful defiance of FSMH's superior right of ownership for several years.[65]  Such allegations are sufficient to establish a plausible inference that Harrison maliciously or recklessly disregarded FSMH's superior possessory rights, as required in order to warrant punitive damages.[66]  Accordingly, the motion to dismiss the conversion claim against Harrison is denied.

### C.    Money Had and Received

FSMH has properly pled a claim for money had and received against Rubin because FSMH has no contractual relationship with Rubin.  FSMH alleges that Rubin wrongfully withheld money to which FSMH is rightfully entitled under the Royalty Agreement.  Because FSMH has sufficiently alleged that Rubin personally received some of that money and should not be permitted to keep it, FSMH has stated a claim for money had and received.

---

[65]     *See* Am. Compl. at 13.

[66]     *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, L.L.C.*, 813 F. Supp. 2d 489, 526 (S.D.N.Y. 2011) ("'To sustain a claim for punitive damages in tort, one of the following must be shown: intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another.'") (quoting *Don Buchwald & Assocs., Inc. v. Rich*, 281 A.D. 2d 329, 330 (1st Dep't. 2001)); *Fraser*, 587 F. Supp. at 1288 ("[D]efendant's alleged conversion was accomplished with malice or reckless disregard of plaintiffs' rights as [is] required to justify punitive damages.").

17

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied. The Clerk of Court is directed to close this motion (Docket No. 9).  A conference is scheduled for November 1, 2013 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              October 24, 2013

18

**- Appearances -**

*For Plaintiff:*

Daniel N. Guisbond, Esq.
Michael S. Elkin, Esq.
Thomas Patrick Lane, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700


*For Defendants:*

Oren J. Warshavsky, Esq.
Maryanne Stanganelli, Esq.
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York City, NY 10111
(212) 589-4200